

# HELEN F. DALTON & ASSOCIATES, P.C.

## ATTORNEYS AT LAW



80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

November 3, 2023

**<u>Via ECF</u>**
The Honorable Judge Anne Y. Shields
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

Re: **<u>Nolasco v. With Pride Air Conditioning & Heating Inc., et al.</u>**
    **23-CV-3631 (NJC)(AYS)**

Dear Judge Shields:

Our office represents Emilio Nolasco ("Plaintiff") and we submit this motion jointly with counsel for With Pride Air Conditioning & Heating Inc. and Michael Dolan ("Defendants") requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' settlement agreement ("Settlement Agreement"), attached hereto as **Exhibit 1**, were reached following a Court-annexed mediation held on October 11, 2023.

The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiffs' counsel's requested attorneys' fees and respectfully request that the Court So Order or approve the Settlement Agreement.

### I.     <u>The Monetary Terms of the Settlement Agreement are Fair and Reasonable</u>

#### a.  The Settlement Amount

The parties agreed to resolve all claims asserted in this action, including Plaintiff's counsel's attorneys' fees, which are addressed below, for the global amount of $90,000.00.

#### b.  Plaintiff's Position

Plaintiff commenced this lawsuit alleging that he was not paid proper overtime wages when required to work in excess of 40 hours per week in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL").

Plaintiff alleged that he was employed by Defendants as an HVAC installer from in or around May 2018 until in or around August 2022. During this period, Plaintiff alleged that he regularly worked approximately seventy-four (74) hours per week but that he was only compensated for his first 40 hours of work at hourly rates ranging from $25.00 per hour to $36.00 per hour. As such, Plaintiff claimed he was owed approximately thirty-four (34) hours of unpaid overtime per workweek.

During the mediation process, the parties exchanged relevant information and documentation regarding Plaintiff's allegations. Defendants provided information and documentation pertaining to the dates of Plaintiff's employment, the number of hours worked by Plaintiff and whether Plaintiff received any additional compensation for any work performed above 40 hours per week.

Although Plaintiff maintained that his alleged dates of employment, alleged hours worked per week and alleged rates of pay were correct, Plaintiff acknowledged the sharp factual disputes that existed between the parties on these issues. Based on the information exchanged and confidential discussions held with the Court-annexed mediator, Plaintiff believed that a reasonable range of recovery for his alleged overtime claim was somewhere between $100,000 to $150,000.

Although Plaintiff was confident that he could prevail on all of his claims should this matter have proceeded to trial, Plaintiff's preference was for a guaranteed outcome via Court-approved settlement. Settlement at this juncture early in the litigation process avoids the inherent risks and costs of litigation and allows Plaintiff to recover a sum certain in the near future as opposed to the uncertainty of a trial at a much later date in time.

### c.  Defendants' Position

At the mediation, Defendants provided documentary evidence, including text messages, GPS records, and wage records to belie Plaintiff's allegations concerning his dates of employment with Defendants, the hours he worked for Defendants, and the compensation he was paid. However, to avoid the expense and burden of litigation and to ensure certainty, Defendants agreed to pay significantly more than what they believe Plaintiff can prove at trial, if anything.

### d.  The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $90,000.00. The parties believe that this amount is reasonable considering Plaintiffs' claims and the defenses and records maintained by Defendants in this matter. Moreover, the settlement amount was only achieved following a Court-annexed mediation before a qualified and experienced Court-appointed mediator with all parties present. The parties had genuine, bona fide disputes over the Plaintiff's position and duties, the hours worked by Plaintiff, the pay received by Plaintiff, but both sides negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount.

## II.       The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable

The parties in this matter have agreed to a general mutual release of all claims in this action. This was carefully negotiated during the mediation as the parties wish to resolve any and all claims that were or could have been asserted against each other. The parties believe that the releases provided for in the Agreement are fair and reasonable and part of the parties' compromise to reach a settlement and gives each party "peace of mind" that they will not be subject to any other litigation. Furthermore, the Plaintiff is no longer employed by Defendants and have no ongoing relationship with Defendants such that it would affect their rights as an employee going forward. Additionally, Plaintiff has no other claims against the Defendants. Defendants know that all potential claims against them have been resolved by the Agreement. Plaintiff also gets the benefit of knowing that no counterclaims or future claims can be brought against him now or in the future.

Since *Cheeks* was decided, courts in both districts of this Circuit have approved mutual general releases in a number of cases. *See Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) ("there is nothing inherently unfair about a release of claims in an FLSA settlement"); *Cionca v. Interactive Realty, LLC*, 2016 WL 3440554, at *4 (S.D.N.Y. June 10, 2016) ("Under these circumstances, a general release of the kind proposed in this case makes sense, in order to bring closure to both sides, and the Court finds it to be fair and reasonable"); *Geskina v. Admore Air Conditioning Corp.*, 2017 WL 1743842, at *3 (S.D.N.Y. May 3, 2017) ("A general release of the kind proposed in this case, with [a] former employee[ ] who ha[s] no ongoing relationship with the employer, makes sense in order to bring complete closure") (internal quotations omitted); *Weng v. T&W Rest., Inc.*, 2016 WL 3566849, at *5 (S.D.N.Y. June 22, 2016) (approving agreement containing "mutual general releases, negotiated by competent counsel for both sides, releasing both plaintiffs and defendants from liability for most claims each might have against the other up to the date the Agreement [was] signed"); *Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015) ("A general release of the kind proposed in this case, with former employees who have no ongoing relationship with the employer, makes sense in order to bring complete closure"). Like in the cases cited above, the parties here have agreed to a *mutual* general release. As such, the Agreement will provide closure to both parties and allow them to "'walk[] away from their relationship … without the potential for any further disputes.'" *Lola*, 2016 WL 922223, at *2 (quoting *Souza*, 2015 WL 7271747, at *5).

Furthermore, the Settlement Agreement does not contain any confidentiality or overbroad non-disparagement provision that would otherwise preclude the parties from openly discussing their experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are fair and reasonable and comport with the standards articulated in *Cheeks*.

### III.   Distribution to Plaintiff and Requested Attorneys' Fees and Expenses

#### a.   Distribution to Plaintiff

The parties agreed to a global settlement of $90,000.00 to resolve all claims asserted against the Defendants in this action. If the Agreement is approved by the Court, Plaintiff will recover $59,218.00 after the requested attorneys' fees and expenses.

#### b.   Requested Attorneys' Fees and Expenses

Plaintiff's counsel respectfully requests $1,173.00 for identifiable expenses, which include:

- the Eastern District of New York filing fee in this matter: $402.00
- the cost of the Court-annexed mediation: $300.00
- the costs of service of the Summons and Complaint on all Defendants: $471.00

Additionally, Plaintiff's counsel respectfully requests one-third of the settlement less the expenses ($88,827.00), or $29,609.00 in attorneys' fees, as agreed upon in Plaintiff's retainer agreement with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $30,782.00.

As such, the settlement funds as broken down into its component parts is as follows:

**Settlement Amount:** $90,000.00
**Attorneys' Expenses:** $1,173.00
**Net Settlement Amount:** $88,827.00 ($90,000.00 - $1,173.00)
**Requested Attorneys' Fees:** $29,609.00 ($88,827.00 / 3)
**Total payable to Attorneys:** $30,782.00 ($29,609.00 + $1,173.00)
**Total payable to Plaintiff:** $59,218.00 ($90,000.00 - $30,782.00)

Plaintiff's attorneys and their client have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013).  Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc.*, 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiff's counsel throughout the litigation of both matters and the recovery secured through their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiff.

**IV.** <u>**Closing**</u>

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of back-and-forth negotiations between experienced counsel with the assistance of the Court-annexed mediation program. As such, we respectfully request that the Court approve the Settlement Agreement. We thank the Court for its consideration and remain available to provide any additional information.

Respectfully submitted,

*James O'Donnell*
James O'Donnell, Esq.